The Full Commission reviewed this matter based on the record of the proceedings before Deputy Commissioner John A. Hedrick and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award, except for some minor, non-substantive modifications.
Following the hearing before Deputy Commissioner Hedrick, the depositions of Jon K. Miller, M.D. and Mr. Chris Baggett were received into evidence.
EVIDENTIARY RULINGS
The objections appearing in the deposition of Dr. Miller are OVERRULED, except for the objections appearing on page 36 which are SUSTAINED.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 14 December 1995 in a Pre-Trial Agreement, and by agreements subsequent thereto as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant.
3. On or about 1 April 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant.
4. An Industrial Commission Form 22, Wage Chart, marked as Stipulated Exhibit Number Two, is admitted into evidence.
5. Plaintiff's Responses to Defendants' First Set of Interrogatories to Plaintiff and Request for Production of Documents, marked as Stipulated Exhibit Number Three, is admitted into evidence.
6. A set of plaintiff's medical and physical therapy records, received by the Industrial Commission on 20 June 1996, is admitted into evidence by stipulation of the parties dated 19 June 1996.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a married male, thirty-eight years old. He had graduated from high school and completed a one year course in computer programming. Plaintiff's work history included approximately eight years of work involving the use of computers, two years of work for an automobile service business, and ten years of work as a millwright. Plaintiff had also worked as a disc jockey in night clubs.
2. Plaintiff began working for defendant as a millwright on 6 February 1995. The duties of a millwright involved constant standing and walking, frequent pushing and pulling, and frequent balancing, stooping, kneeling and crouching. As a millwright, plaintiff was required to lift up to one hundred pounds occasionally and fifty pounds frequently. His work also involved regular use of tools and machinery parts weighing ten pounds. Plaintiff's average weekly wage was $1,110.20.
3. On 1 April 1995, plaintiff was performing the usual duties of his position as a millwright. While working on top of a paper machine, he was struck on the left side of his head by an overhead crane. The crane was moving at approximately five miles per hour when it struck plaintiff. The force of the blow knocked plaintiff off his work bucket and onto the surface where he had been sitting. Plaintiff was wearing a hard hat at the time of the incident and did not sustain any lacerations or loss of consciousness. The blow did cause plaintiff to twist his neck and lower back.
4. Shortly after the incident, plaintiff experienced neck stiffness for which he received first aid treatment from defendant. Plaintiff returned to work the following day. Upon returning to work, plaintiff experienced stiffness and aches in his neck, upper back and lower back. Plaintiff sought and obtained permission from defendant to receive treatment from a physician.
5. On 4 April 1995, plaintiff presented to Dr. Delaney. On that date, plaintiff continued to have neck and back pain and stiffness. Plaintiff also had a loss of sensation in his right arm and hand, but he had no neurological deficits. Although Dr. Delaney excused plaintiff from work for two days, plaintiff returned to work on April 5th. Plaintiff did not return to his regular duties. Rather he spent much of that day reading. Plaintiff returned to Dr. Delaney on 6 April 1995. Dr. Delaney again restricted plaintiff to light duty.
6. On 7 April 1995, defendant terminated plaintiff's employment as part of a layoff of millwrights. Thereafter, plaintiff was referred to Dr. Miller by a rehabilitation nurse retained by defendant to assist plaintiff in his rehabilitation. Dr. Miller prescribed physical therapy which plaintiff began on 2 May 1995. On 9 May 1995, Dr. Miller released plaintiff to return to light duty work, avoiding repetitive bending or lifting. These physical restrictions were inconsistent with the physical demands of employment as a millwright.
7. From 2 May 1995 through 24 August 1995, plaintiff attended approximately thirty-eight physical therapy sessions. Plaintiff failed to attend approximately thirteen additional therapy sessions that were scheduled during this time. Plaintiff missed these therapy sessions for several reasons. Plaintiff missed some sessions due to an inability to sleep during the night. He missed other sessions because he was required to transport his spouse to and from work.
8. On 18 July 1995, plaintiff underwent a functional capacity examination. Plaintiff "put forth good physical effort" in the majority of the testing categories. On that date, plaintiff remained incapable of performing the job duties of a millwright.
9. Plaintiff's pain in his neck and back, and the loss of sensation in his right arm and hand, resulted from cervical and lumbar strains. Plaintiff's cervical and lumbar strains were caused by the incident on 1 April 1995.
10. On or before 28 July 1995, plaintiff began working as a disc jockey at a night club in Carolina Beach, North Carolina. Plaintiff's average weekly wage in his new employment was $60.00.
11. After his injury, plaintiff moved to New Hanover County where he sought employment as a millwright or mechanic. Plaintiff applied for these positions with seven other employers in the vicinity of Wilmington, North Carolina. As a result of his injury, plaintiff's attempts to obtain alternative employment were unsuccessful.
12. As a result of his injury on 1 April 1995, plaintiff was incapable of earning wages from defendant or any other employer from 7 April 1995 through 27 July 1996.
13. As a result of his injury, plaintiff's earning capacity was diminished by $1,050.20 per week from 28 July 1995 and continuing through the date of the hearing in this matter.
14. Defendant did not defend plaintiff's claim without reasonable ground.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As the result of his injury by accident on 1 April 1995, plaintiff is entitled to payment of temporary total disability compensation at the rate of $478.00 per week from 7 April 1995 through 27 July 1995. G.S. § 97-29.
2. Plaintiff is entitled to payment of temporary partial disability compensation at the rate of $478.00 per week from 28 July 1995 and continuing for three hundred weeks from 1 April 1995, less the number of weeks during which plaintiff received temporary total disability compensation, or until further order by the Industrial Commission. G.S. § 97-29; G.S. § 97-30.
3. Plaintiff is entitled to payment of all medical expenses incurred as a result of his injury on 1 April 1995. G.S. § 97-25; G.S. § 97-25.1.
4. Because defendant did not defend this claim without reasonable ground, plaintiff is not entitled to attorney's fees pursuant to G.S. § 97-88.1.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $478.00 per week from 7 April 1995 through 27 July 1995. This amount shall be paid in a lump sum, subject to the attorney's fee approved herein.
2. Defendant shall pay plaintiff temporary partial disability compensation at the rate of $478.00 per week from 28 July 1995 and continuing for three hundred weeks from 1 April 1995, less the number of weeks during which plaintiff received temporary total disability compensation, or until further order of the Industrial Commission. To the extent that this amount has accrued, it shall be paid in a lump sum, subject to the attorney's fee approved herein.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of his injury on 1 April 1995.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sums due plaintiff shall be deducted from those amounts and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
5. Defendant shall pay the costs.
 S/ __________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ DIANNE C. SELLERS COMMISSIONER